DIVA'S, INC., et al., Plaintiff,

v.

CITY OF BANGOR, Defendant.

No. Civ. 98–136–B.

United States District Court,
D. Maine.

Sept. 23, 1998.

parate treatment claim.

Wayne R. Foote, Foote & Temple, Bangor, ME, for Plaintiff.

Erik M. Stumpfel, City of Bangor, Legal Department, Bangor, Mark F. Frank, Thompson & Bowie, Portland, ME, for Defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiffs, Diva's, Inc. ("Diva's"), DMC, Inc. ("DMC"), and Diane M. Cormier, d/b/a The Bod Squad ("The Bod Squad"), request that the Court enjoin the City of Bangor ("City") from enforcing Sections 3(h) [1] and 6(a) [2] of Chapter VII, Article 1–C of the Laws & Ordinances of the City of Bangor entitled "Regulating Commercial Displays of Nudity" ("Ordinance"). At a hearing on Plaintiffs' Motion for Preliminary Injunction, Plaintiffs' requests for preliminary and permanent relief were consolidated without objection. For the reasons set forth below, Plaintiffs' request for a permanent injunction is GRANTED.

### I. BACKGROUND

On May 27, 1998 the Bangor City Council adopted Council Order 98–117 enacting Chapter VII, Article 1–C of the Laws and Ordinances of the City of Bangor. The Ordinance, which became effective on June 6, 1998, regulates commercial displays of nudity. The Ordinance provides that commercial establishments offering such displays must obtain a certificate of occupancy subject to restrictions on their location within the City,[3] a minimum employee age,[4] and a ban on the provision of alcohol.[5] An additional restriction—the only one challenged by Plaintiffs—prohibits issuance of a certificate of occupancy to any principal (or individual with an

---

**1.** "No Certificate of occupancy shall be issued for a commercial establishment offering nude entertainment, if the applicant or any other person named in the application under Section 3(b) above is the owner or operator of an escort service, dating service, or booking agency doing business in Penobscot County."

**2.** "Within thirty (30) days after the effective date of this Ordinance, all commercial establishments offering nude entertainment that wish to remain in operation at their existing location shall apply for a new certificate of occupancy as provided in Section 3 above. In considering those applications, the requirements of Section 3(d), 3(e) and 3(g) shall not be deemed to apply. Provided, however, that any certificate of occupancy granted to an existing establishment under this Section, that otherwise would have been denied under Section 3(d), 3(e), or 3(g), shall be deemed to expire one (1) year from the effective date of this Ordinance, and shall not be renewed thereafter, unless the applicant and the premises concerned shall at that time comply with all requirements of this Ordinance."

**3.** *See* Bangor, Me., Ordinance, ch. 34, art. 1–C, § 3(d) & (e) (1998).

**4.** *See id.* § 4(a).

**5.** *See id.* § 4(c).

interest of five percent or more) of a commercial establishment offering nude dancing if the same individual also operates an escort service, dating service, or booking agency within Penobscot County.[6]

Diva's and DMC are located in the City of Bangor and offer nude entertainment as defined in Section 2 of the Ordinance, specifically nude dancing. The Bod Squad is an agency with a place of business in Penobscot County that contracts with dancers and those wishing to hire dancers for nude dancing performances at parties and other occasions. Plaintiff Diane Cormier, d/b/a The Bod Squad, is a principal of both Diva's and DMC.

Plaintiffs filed suit against the City seeking to enjoin enforcement of Sections 3(h) and 6(a) of the Ordinance claiming that enforcement would violate their rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution and Article I of the Maine Constitution.

Following removal of this case to federal court, a hearing was held on Plaintiffs' Motion for Preliminary Injunction. At the Court's suggestion, Plaintiffs' requests for preliminary and permanent injunctive relief were consolidated for hearing and disposition by agreement.

## II. INJUNCTIVE RELIEF

 To merit a preliminary injunction, a movant must establish four criteria: (1) that irreparable harm will result to the movant if the injunction is not granted; (2) that the harm to the movant from a denial of an injunction outweighs the harm to the defendant caused by a grant of injunction; (3) that the movant is likely to succeed on the merits; and (4) that a grant of injunction would not adversely affect the public interest. *See AFL–CIO Laundry & Dry Cleaning Int'l Union v. AFL–CIO Laundry,* 70 F.3d 717, 718 (1st Cir.1995). "Where, as here, the action has been consolidated—allowing the parties a full opportunity to present the merits of their cases—and permanent injunctive

relief is involved, the standard of review is essentially the same except that the movant must show actual success on the merits rather than a mere likelihood." *K–Mart Corp. v. Davis,* 756 F.Supp. 62, 66 (D.P.R.1991) (citing *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)).

The Court finds that Plaintiffs prevail on the merits of their claim, and also have demonstrated the three additional factors entitling them to a permanent injunction.

## III. DISCUSSION

### A. Success on the Merits

Plaintiffs allege that the Ordinance's prohibition against issuing occupancy permits to nude dancing establishments that are owned by an entity that also operates a "booking agency" violates various provisions of the United States and Maine Constitutions.[7] Specifically, Plaintiffs make the following claims: (1) Sections 3(h) and 6(a) of the Ordinance substantially impair their ability to engage in protected free speech activities; (2) the term "booking agency" is overbroad causing a substantial chilling effect on protected free speech activities; (3) the term "booking agency" is vague resulting in a deprivation of due process of law; (4) Sections 3(h) and 6(a) of the Ordinance constitute a bill of attainder and deny equal protection of the law; (5) Sections 3(h) and 6(a) of the Ordinance result in a taking of property without just compensation; and (6) Sections 3(h) and 6(a) of the Ordinance affect Plaintiffs rights, status, and legal relations. Since the Court finds resolution of the First Amendment claims to be dispositive, it does not reach Plaintiffs' other claims.

 It is well established that nude dancing is expressive conduct within the scope of the First Amendment. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111

---

**6.** *See id.* § 3(h).

**7.** The Court need not examine Plaintiffs' state constitutional claims since it finds that the Ordinance violates Plaintiffs' rights under the United States Constitution.

S.Ct. 2456, 115 L.Ed.2d 504 (1991). While nude dancing enjoys First Amendment protection, it is not completely immune from all regulation. Indeed, ordinances designating specific areas of a city where such performances may take place, *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 52, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), setting a minimum age of employees, *DLS. Inc., v. City of Chattanooga*, 107 F.3d 403, 414 (6th Cir.1997), and requiring performers to wear certain clothing, *Barnes*, 501 U.S. at 567, 111 S.Ct. 2456, routinely have been upheld.

The City of Bangor's attempt to regulate adult entertainment by the means set forth in Sections 3(h) and 6(a) of the Ordinance is unique. In fact, the City admitted at oral argument that its prohibition against issuing an occupancy permit for nude dancing to any individual who also owns an escort service, dating service, or booking agency was not modeled on any existing ordinances. Although the Supreme Court has stated in reference to the zoning of adult uses that communities may "experiment with solutions to admittedly serious problems," *Renton*, 475 U.S. at 52, 106 S.Ct. 925, such experiments may not exceed the bounds of the Constitution. This Court concludes that the challenged sections of the Ordinance do just that by acting as a prior restraint on expression, and therefore do not pass constitutional muster.

### 1. Prior Restraint

■ The doctrine of prior restraint prevents the government from quelling expression in advance of its communication. *See Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) While not *per se* unconstitutional, a prior restraint bears a heavy presumption against constitutionality. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Licencing and permitting schemes constitute prior restraints since they require would-be speakers to obtain the government's permission to express their message. *See id.* When such schemes are so vague and ambiguous as to invest government officials with unbridled discretion to deny permission based on the content

of expression, they are unconstitutional. *See id.* at 225–26, 110 S.Ct. 596.

■ Here, the City's use of the term "booking agency" in Section 3(h) of the Ordinance is sufficiently vague to render that Section unconstitutional. A statute is vague when a person of reasonable intelligence "must necessarily guess at its meaning." *Broadrick v. Oklahoma*, 413 U.S. 601, 607, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (quoting *Connally v. General Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). The Ordinance does not define "booking agency." While the City nevertheless argues that the term's meaning is evident when viewed in the context of the entire Ordinance, the Court disagrees. As Plaintiffs persuasively point out, the term conceivably could encompass any business that contracts with consumers and performers to provide any type of performance, not just nude dancing. This potential for broad interpretation gives City officials the opportunity to deny occupancy permits for nude dancing establishments to owners of a whole range of legitimate businesses merely as a pretext for suppressing the content of expression occurring at such establishments.

■ The Court declines the City's invitation to interpret the term "booking agency" to eliminate any ambiguity. Judicial construction of statutory terms is appropriate in the face of an *overbreadth* challenge if the statute is "readily susceptible" to limitation. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 412 n. 12, 112 S.Ct. 2538, 120 L.Ed.2d 305 (quoting *Virginia v. American Booksellers Assn., Inc.*, 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)). The challenge to the present Ordinance, however, is based on vagueness. As the First Circuit explained:

> While related, [the doctrines of overbreadth and vagueness] derive from somewhat different policies and look to different effects. Overbreadth analysis looks to whether a law "sweeps within its ambit (protected) activities" as well as unprotected ones, while a vagueness inquiry focusses on whether a law states its proscriptions in terms sufficiently indefinite that persons of reasonable intelligence "must necessarily guess at its meaning."

*Fantasy Book Shop, Inc. v. City of Boston,* 652 F.2d 1115, 1122 n. 9 (1st Cir.1981) (citations omitted). Here, as in *Fantasy Book Shop,* vagueness analysis is fitting since the Ordinance does not reach forms of expression beyond nude dancing, "but does state prohibitions that serve to preclude protected activity by their effect." *Id.* Judicial construction of a vague statute is neither required nor appropriate. *See, e.g., id.* at 1122–24.

## 2. Time, Place, and Manner Restriction

The City argues that the Ordinance should be analyzed as a content-neutral restriction on the time, place, and manner of protected speech. Two Supreme Court cases provide the standard for judging the validity of a so-called "time, place, and manner" restriction. In *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the Court applied a three-part test to an ordinance prohibiting an adult motion picture theater from locating within 1,000 feet of any residential zone, dwelling, park, or school. The Court first asked whether the ordinance was content-neutral. It then considered whether the ordinance: (1) was designed to serve a substantial governmental interest; and (2) allowed for reasonable alternative avenues of communication. *See Renton,* 475 U.S. at 50, 106 S.Ct. 925. Five years later, in *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), a plurality of the Court applied the four-pronged test first articulated in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), to an Indiana statute requiring nude performers to wear pasties and G-strings. In the course of its analysis, the Court noted that the three-part inquiry in *Renton* was derived from the *O'Brien* test that requires a showing that: (1) the regulation is within the constitutional power of the government; (2) the regulation furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *See Barnes,* 501 U.S. at 567, 111 S.Ct. 2456, (citing *United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)).

Whether one applies the *O'Brien* or *Renton* tests, the City's Ordinance does not survive constitutional scrutiny. The Court accepts the City's assertion that Section 3(h) of the Ordinance is aimed at reducing prostitution and that this goal constitutes a substantial governmental interest. *See Renton,* 475 U.S. at 48–50, 106 S.Ct. 925. However, the City has failed to show any relationship between a denial of occupancy permits to those owners of nude dancing clubs who also operate booking agencies and the reduction of prostitution. Thus, Section 3(h) is neither "designed to serve a substantial governmental interest" under *Renton,* nor does it "further a substantial governmental interest" as required by *O'Brien.*

The City claims that it is entitled to rely on studies from other cities to support its action, and points to the legislative record which contains studies conducted in Texas, New York, Minnesota, and other states. The Court agrees that the City may base its action, at least in part, on evidence from other communities. *See Renton,* 475 U.S. at 51, 106 S.Ct. 925. The studies relied upon by the City here, however, do not address the connection between co-ownership of a booking agency and a nude dancing establishment and prostitution. Rather, these studies support no more than the proposition that nude dancing establishments alone may be associated with certain crimes, including prostitution. Furthermore, these studies focus only on the efficacy of land use and zoning schemes in reducing crime. None documents, or even mentions, the efficacy of an ordinance of the type enacted by the City of Bangor in reducing prostitution or any other crime.

The anecdotal evidence relied on by the City also fails to support a link between nude dancing establishments, booking agencies, and prostitution. Defendant highlights the testimony of a Diva's dancer that prostitution was common at another nude dancing club at which she used to work. *See* Defendant's Response to Motion for Preliminary Injunction at 10. This comment merely indicates that prostitution is associated with nude

dancing establishments, not that nude dancing establishments owned by an individual who also owns a booking agency promote prostitution. So too with evidence regarding the arrest of two women for prostitution at Studio 1431, a nude dancing establishment owned by Diane M. Cormier, d/b/a The Bod Squad. *See* Legislative Record, Part I, at 111–112, 116–117. First, the charges against the women were dropped after a judicial determination that their activities did not constitute prostitution. *See id.* at 116–17. Second, although Diane M. Cormier, d/b/a The Bod Squad owns Studio 1431, there is no indication that The Bod Squad, a booking agency, was in any way connected to the activities which occurred solely in Studio 1431.

Without reaching the other elements of these tests, the Court finds that Sections 3(h) and 6(a) of the Ordinance do not meet the requirements of *Renton* or *O'Brien* based on the City's failure to adequately demonstrate a relationship between the problem the Ordinance seeks to remedy and the nature of the remedy chosen.

### B. Additional Factors for Grant of a Permanent Injunction

Given the conclusions reached by the Court above, Plaintiffs easily meet the additional requirements for granting a permanent injunction.

#### 1. Irreparable Harm to Movant

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *see also Romero Feliciano v. Torres Gaztambide,* 836 F.2d 1, 4 (1st Cir.1987). The City does not dispute that the nude performances presented by Diva's and DMC are expressive conduct within the purview of the First Amendment. Denial of a permanent injunction and enforcement of Sections 3(h) and 6(a) of the Ordinance therefore would result in irreparable harm to Plaintiffs by depriving them not only of the income and good will generated by their businesses, but also their right to free speech.

#### 2. Harm to Movant Outweighs Harm to Defendant

Failure to demonstrate a connection between enforcement of the Ordinance and a reduction in prostitution deprive the City of any claim that it would be harmed by the grant of a permanent injunction. Moreover, the City remains free to address prostitution or any other criminal conduct through enforcement of the criminal law. The harms to Plaintiffs clearly outweigh any harm to the City.

#### 3. Grant of Injunction Would Not Adversely Affect Public Interest

There is no evidence that enjoining the City from enforcing Sections 3(h) and 6(a) of the Ordinance will adversely affect the public in any way. Moreover, permanently enjoining enforcement of an unconstitutional ordinance will benefit the public by preserving First Amendment freedoms.

### IV. CONCLUSION

For the reasons discussed above, Plaintiffs' request for a permanent injunction is GRANTED.

*SO ORDERED.*