[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-11152

_____

D. C. Docket No. 98-02441-CV-GET-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 20 2001
THOMAS K. KAHN
CLERK

FLANIGAN'S ENTERPRISES, INC. OF GEORGIA,
d.b.a. Mardi Gras,

Plaintiff-Appellant,

versus

FULTON COUNTY, GEORGIA THE BOARD OF COMMISSIONERS OF
FULTON COUNTY, GEORGIA, et al..,

Defendants-Appellees.

----------------------------

6420 ROSWELL ROAD, INC. , a Georgia Corporation, d.b.a. Flashers, HARRY
FREESE, individually and as Licensee for Flashers, et al.,

Plaintiffs-Appellants,

versus

FULTON COUNTY, THE BOARD OF COMMISSIONERS OF FULTON
COUNTY, GEORGIA, et al.,

Defendants-Appellees.

----------------------

CEEDA ENTERPRISES, INC. d.b.a. Riley's Restaurant and Lounge,

                                                        Plaintiff-Appellant,

                                versus

FULTON COUNTY, GEORGIA, THE BOARD OF COMMISSIONERS OF
FULTON COUNTY, GEORGIA, et al.,

                                                        Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____
**(February 20, 2001)**

Before DUBINA, FAY and COX, Circuit Judges.

PER CURIAM:

Plaintiffs, four adult entertainment businesses ("Plaintiffs") operating in unincorporated Fulton County, Georgia appeal from the grant of summary judgment in favor of defendants Fulton County and its Board of Commissioners. The district court held that a 1997 amendment to Section 18-76 of the Fulton County Code ("Section 18-76" or "1997 amendment") which prohibited the sale and consumption of alcoholic beverages in adult entertainment establishments was

2

constitutional as a matter of law. The district court found that the 1997 amendment operated as a content-neutral restriction that furthered the government's interest in preventing negative secondary effects associated with adult entertainment businesses, and denied Plaintiffs' claims based on due process, prior restraint, and contract impairment. On appeal, Plaintiffs contend that the amendment to Section 18-76 fails to further the government's purported concern because local studies show no evidence of negative secondary effects connected with Plaintiffs' clubs. Plaintiffs also contend that Defendants' conduct in passing the 1997 amendment violated due process, that the amendment impairs their contractual obligations, and that the district court erred in declining to reach the merits of their prior restraint claim. We hold that the 1997 amendment fails to further Defendants' purported concern with negative secondary effects, and accordingly REVERSE IN PART and AFFIRM IN PART the district court's grant of summary judgment.

I.     Background Facts

In considering whether to amend Section 18-76, the Fulton County Board of Commissioners ("Board") passed a resolution directing the Fulton County Police Department, the County Attorney, and the Department of Planning and Economic Development (collectively "Fulton County staff") to conduct a study on the

secondary effects of alcohol consumption in adult entertainment establishments located in Fulton County. See Fulton County, Ga., Resolution Relating to Regulation of Alcohol Consumption in Adult Entertainment Establishments (Apr. 16, 1997). The Board also directed Fulton County staff to assemble similar studies from foreign jurisdictions ("foreign studies"). The resolution stated that the Board had reason to believe that consumption of alcoholic beverages in adult entertainment establishments contributed to increased crime and decreased real property values. The resolution further stated the Board's intent "to enact, if warranted by said studies, a carefully tailored regulation to minimize the negative secondary effects of the serving and consumption of alcoholic beverages at adult entertainment establishments...."

On June 13, 1997, the Fulton County Police Department completed a study concerning the number of calls for police assistance and the number and types of crimes occurring in the vicinity of twelve drinking establishments: six that featured adult entertainment and six that did not. See Study of Calls for Service to Adult Entertainment Establishments Which Serve Alcoholic Beverages (June 13, 1997). The study concluded that, for the time period January 1, 1995 through May 31, 1997, there was no statistical correlation showing an increase in crime at adult entertainment establishments that served alcoholic beverages. Rather, the statistics

4

indicated greater instances of calls for service and reported crime at non-adult entertainment establishments that served alcoholic beverages.

In or about June 1997, the six Fulton County adult entertainment establishments ("the Clubs"), four of which are owned by Plaintiffs, commissioned Land Development Analysts, Inc. ("LDA, Inc.") to conduct a study of the Clubs' economic impact on their surrounding environs. Specifically, LDA, Inc. sought to identify negative impacts, if any, on the business volumes, rental rates and property values of surrounding properties. The study revealed high occupancies and rental rates in existing buildings, expensive improvements, business expansions, turn-away business volume and proposed development in the Clubs' vicinities. See Economic Impact Study, Six Locations in Three Neighborhoods, Fulton County, Georgia (June 1997). LDA, Inc. could not identify any detrimental impacts as caused by the Clubs.

In response, the Board of Commissioners retained its own appraiser, Dabney & Associates ("Dabney"), to inspect the subject properties and to review the economic impact study prepared by LDA, Inc. The Dabney report claimed several weaknesses with the aforementioned study, but determined that the report's

weaknesses did not invalidate it's conclusions.[1] The Dabney report found that LDA, Inc. gathered appropriate data and arrived at reasonable conclusions. Based on the market data provided by LDA, Inc., Dabney found that the Clubs had caused no diminution of property values or rents. See An Administrative Review of An Economic Impact Study of Six Locations In Three Neighborhoods, Fulton County, Georgia dated August 7, 1997. Dabney personally observed that none of the subject properties or those around them showed a lack of maintenance.[2] The Clubs bore restrained identification signs, and Dabney found it difficult even to identify two of the Clubs as adult entertainment establishments. Thus, the Dabney report drew similar to identical conclusions to that of LDA, Inc., i.e., that the Clubs had caused no quantifiable "blight" upon their environs.

---

[1] The Dabney report posited that: (1) LDA, Inc.'s use of broad neighborhoods may have eclipsed adverse impacts in the Clubs' immediate areas; (2) the failure to use control neighborhoods precluded evidence that increasing market values might have reached even higher levels without the presence of adult entertainment establishments; and (3) the failure to define key underlying terms, specifically "blight," resulted in undue focus on market conditions that may not directly relate to maintenance of surrounding properties, see also, infra, n.2. The Dabney report also criticized LDA, Inc. for failing to detail the results of services it claimed to have performed, such as to review demographic and economic trends, to identify the highest and best use of properties, and to review existing and proposed zoning changes. Because this data did not relate to blight, or a lack of maintenance in and around the Clubs, the Dabney report stated that such omission did not invalidate the conclusions of LDA, Inc.

[2] Noting that *The Dictionary of Real Estate Appraisal* defines "blight" as a failure to maintain the quality of real estate, Dabney focused on maintenance as a key element contributing to blight. The Dabney report criticized LDA, Inc. for neglecting to directly consider maintenance, but concluded that LDA, Inc. presented information about the Clubs' surrounding areas that might serve as proxies for "maintenance" both in an economic sense and general physical sense.

6

The Board held two public meetings, on November 19, 1997, and on December 17, 1997, to consider the amendment. At the first public meeting, the Board considered the following: (1) foreign studies collected by Fulton County staff;[3] (2) the LDA, Inc. study; (3) the Fulton County Police study; (4) and the Dabney report. The Board also received public comments and permitted counsel for Plaintiffs fifteen minutes each to present their position regarding the proposed amendment and the relevant studies.

On December 17, 1997, at the second public hearing, the Board met and approved the amendment to Section 18-76. The 1997 amendment prohibits the serving, offering or consuming of any alcoholic beverages on the premises of an

---

[3] The foreign jurisdictions studies included: (1) City of Austin, Texas Report; (2) Analysis of Adult Entertainment Businesses in Indianapolis, Indiana; (3) Analysis of the Relationship Between Adult Entertainment Establishments, Crime, and Housing Values in Minneapolis; and (4) Study of the Effects of the Concentration of Adult Entertainment Establishments in the City of Los Angeles.

adult entertainment licensee.[4]  The preamble to the ordinance provides the Board's

justification for the amendment:

> ...WHEREAS, in a public hearing held November 19,
> 1997, the Board of Commissioners heard testimony and
> received studies from its staff, the public, and from
> representatives of the adult entertainment industry
> concerning negative secondary effects connected with
> adult entertainment facilities where alcoholic beverages
> are consumed, and live nude, or partially nude,
> performances are presented;
>
> WHEREAS, based upon the experience of other urban
> counties and municipalities, which experiences the Board
> of Commissioners finds are relevant to the problems
> faced by Fulton County, Georgia, and which do not vary
> greatly among generally comparable communities within
> this country, the Board of Commissioners finds that
> public nudity, under certain circumstances, particularly
> circumstances related to the sale and consumption of
> alcoholic beverages in adult entertainment facilities

---

[4]  Section 18-76 "Rules for Operation" now states that:

> Any person, firm partnership, or corporation licensed hereunder
> shall comply with the following rules and regulations pertaining to
> the operation of the adult entertainment establishment:
> > ...
> > (7)  No licensee shall permit any alcoholic beverages to be
> > served, offered, or consumed on the premises.
>
> Violations of these rules and regulations may result in revocation
> of the license.

Fulton County, Ga., Code § 18-76 (1997) (effective Jan. 1, 1998, provided that adult
entertainment facilities holding adult entertainment licenses on Dec. 17, 1997, shall not
be subject until Dec. 31, 1998).

offering live entertainment, begets criminal behavior and tends to create undesirable community conditions;

WHEREAS, among the undesirable community conditions identified with live nude entertainment and alcohol are depression of property values in the surrounding neighborhood, increased expenditure for the allocation of law enforcement personnel to preserve law and order, increased burden on the judicial system as a consequence of the criminal behavior herein above described, and acceleration of community blight by the concentration of such establishments in particular areas;

WHEREAS, the limitation of nude conduct in establishments licensed to sell alcohol for consumption on the premises is in the public welfare, and it is a matter of government interest and concern to prevent the occurrence of criminal behavior and undesirable community conditions normally associated with establishments which serve alcohol and also allow or encourage nudity;....

Ordinance Amending Fulton County, Ga., Code § 18-76 (Dec. 17, 1997).

II      Procedural History

On August 25, 1998, plaintiff Flanigan's Enterprises, Inc. of Georgia, d/b/a Mardi Gras ("Mardi Gras") filed a civil action in the District Court for the Northern District of Georgia seeking declaratory and injunctive relief and monetary damages. The civil action names Fulton County, a political subdivision of the State of Georgia, and the Fulton County Board of Commissioners, individually and in their official capacities, as defendants (collectively

"Defendants").  On October 5, 1998, plaintiff CEEDA Enterprises, d/b/a Riley's

Restaurant and Lounge ("Riley's") and plaintiff 6420 Roswell Road, Inc. d/b/a

Flashers, Harry Freese, Fannies, Inc., and William H. Parks, Jr. ("Flashers and

Fannies") filed suit against the same Defendants.  The complaints, filed pursuant to

42 U.S.C. § 1983, seek a declaration that Section 18-76, as amended, operates as

an impermissible prior restraint and violates the free speech clause of the First

Amendment, the takings clause of the Fifth Amendment, the equal protection

clause, and both the substantive and procedural guarantees of the due process

clause of the Fourteenth Amendment.  The complaints further seek a permanent

injunction prohibiting the enforcement of this provision against the Plaintiffs, and

damages for condemnation, intentional interference with business relations, and

breach of contract.

The district court, Hon. G. Ernest Tidwell, consolidated the three cases by

agreement of the parties.  On February 4, 2000, the district court entered summary

judgment in favor of the Defendants on all claims.[5]  Relying on Sammy's[6], the

---

[5] In all three cases, the Plaintiffs filed separate briefs in response to Defendants' motion for summary judgment.  However, the district court addressed each argument as it related to the Plaintiffs as a group because each plaintiff incorporated the briefs and arguments of the other plaintiffs.  We employ the same approach because Plaintiffs have incorporated each others' Briefs on appeal.

[6] Sammy's of Mobile, Ltd. v. City of Mobile, 140 F.3d 993 (11th Cir. 1998), cert. denied, 120 S.Ct. 1553 (2000).

10

district court determined that an ordinance prohibiting nude dancing in establishments licensed to sell liquor constitutes a content-neutral law subject to intermediate scrutiny under O'Brien.[7] The district court concluded that Section 18-76 was constitutional as a matter of law because, like the ordinance in Sammy's, Section 18-76 was amended to prevent negative secondary effects related to nude dancing, and therefore, furthered a substantial government interest unrelated to free expression. The court reasoned that the experience of other urban areas provided the requisite factual basis for the Board's stated justification that nude dancing begets criminal behavior and tends to create undesirable community conditions. Moreover, the district court rejected Plaintiffs' arguments that the Board, in the face of contradictory local studies, unreasonably relied on outdated and foreign studies that focused on the location of adult entertainment businesses rather than the relationship between alcohol and live nude entertainment.

With respect to the Plaintiffs' due process challenge, the district court found that the Defendants' actions in amending Section 18-76 constituted legislative action because the amendment applies generally to all adult entertainment establishments existing now or created in the future. However, even if the 1997 amendment could be characterized as adjudicative in nature, the Clubs did not have

---

[7] United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673 (1968).

a vested right in the renewal of their adult entertainment and liquor licenses because section 18-42 of Article II of the Fulton County Code requires annual registration in accordance with Article II, and the Clubs did not have a vested right in the law never changing.[8] Moreover, the district court found that Plaintiffs were given sufficient due process, i.e., notice of the proposed legislation, time to state their concerns and to submit their own studies at the first public hearing.

The district court did not address the merits of the Plaintiffs' claim that Section 18-76 operates as an invalid prior restraint. The district court found that such a claim was not adequately set forth in the pleadings, and therefore, was untimely raised for the first time in response to the Defendants' motion for summary judgment. Finally, the district court determined that even if the amendment to Section 18-76 impaired the Clubs' contractual leases, the amendment constituted a necessary exercise of the county's police power in order to prevent the negative secondary effects related to the sale and consumption of alcohol in adult entertainment establishments.

On February 22, 1997, Plaintiffs filed a motion for reconsideration, and on March 3, 1997, the Plaintiffs timely filed a Notice of Appeal. On March 27, 1997,

---

[8] As the district court found that the Clubs did not have a vested right in the renewal of their licenses, Plaintiffs' claim for just compensation pursuant to the Fifth and Fourteenth Amendments also failed as a matter of law. Plaintiffs do not contest this finding on appeal.

the district court entered an order denying the Plaintiffs' motion to reconsider the order granting summary judgment to the Defendants on all counts. Plaintiffs thereafter proceeded with the present appeal.

III   DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. See Harris v. H&W Contracting Co., 102 F.3d 516, 518 (11th Cir.1996). We will affirm the district court if the record demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir.1990).

A.  Freedom of Expression

The Supreme Court has recently reaffirmed that nude dancing of the type at issue here is expressive conduct that falls within the outer ambit of the First Amendment's protection. City of Erie v. Pap's A.M., 529 U.S. 277, 120 S.Ct. 1382, 1391 (2000) (citing Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565-566, 111 S.Ct. 2456 (1991) (plurality opinion); see also Schad v. Mount Ephraim, 452 U.S. 61, 66, 101 S.Ct. 2176 (1981). Thus, municipal ordinances like the one at issue that regulate nude dancing are subject to constitutional scrutiny.

### 1. Establishing the Proper Standard of Review

To determine what level of scrutiny applies, we must decide "whether the State's regulation is related to the suppression of expression." Pap's, 120 S.Ct. at 1391 (quoting Texas v. Johnson, 491 U.S. 397, 403, 109 S.Ct. 2533 (1989)). If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy intermediate scrutiny under O'Brien. Pap's, 120 S.Ct. at 1391 (citing cases). If the government interest is related to the content of the expression, however, then the regulation falls outside the scope of the O'Brien test and must be subjected to strict scrutiny. Id. Thus, the principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because of disagreement with the message it conveys or if it is justified without reference to the content of regulated speech. Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754 (1989).

In Pap's, the Supreme Court held that a municipal ordinance banning all public nudity, as applied to establishments that offered nude dancing, was content-neutral. Pap's, 529 U.S. 277, 120 S.Ct. 1382. The Court reasoned that the city of Erie's asserted interest in combating negative secondary effects associated with adult entertainment establishments was unrelated to the suppression of the erotic message conveyed by nude dancing. See id. As in Pap's, the preamble to Section

14

18-76 expressly states that the 1997 amendment was intended to target the negative secondary effects associated with adult entertainment establishments. Therefore, the Defendants' purpose in prohibiting nude dancing in establishments licensed to sell liquor is not related to the suppression of any erotic message conveyed by nude dancing.

Plaintiffs Fannies and Flashers argue that the amendment to Section 18-76 is distinguishable from the ordinance at issue in Pap's because Fulton County is not attempting to ban all public nudity. See Pap's, 120 S.Ct. at 1391 (reasoning that the ordinance "does not target nudity that contains an erotic message; rather, it bans all public nudity, regardless of whether that nudity is accompanied by expressive activity"). Fannies and Flashers contend that Section 18-76 is content-based because it only bans nude dancing in establishments licensed to sell alcoholic beverages. Similarly, they claim that Section 18-76 treats live nude dancing differently from non-live nude dancing and, therefore, is content-based because it favors one message over another. If the combustible nature of nudity and alcohol were truly the problem Defendants sought to correct, Fannies and Flashers assert that the Board would have enacted a general ban on nudity. See Pap's, 529 U.S. 277, 120 S.Ct. 1382; Barnes, 501 U.S. 560, 111 S.Ct. 2456.

First, this circuit has specifically held that a city ordinance prohibiting nude dancing in establishments licensed to sell liquor is content-neutral and therefore, subject to review under the O'Brien test.  See Sammy's of Mobile, Ltd, v. City of Mobile, 140 F.3d 993, 996 (11th Cir. 1998), cert. denied, -- U.S. –, 120 S.Ct. 1553 (2000).[9]  We have subsequently reaffirmed this holding, guided by Pap's, reasoning that regulations targeting undesirable secondary effects of adult entertainment establishments that serve alcoholic beverages are unrelated to the suppression of the erotic message conveyed by nude dancing.  Artistic Entertainment, Inc. v. City of Warner Robins, 223 F.3d 1306, 1309 (11th Cir. 2000) (explaining that ordinance's express purpose was to reduce criminal activity and "other undesirable community conditions"); Wise Enterprises, Inc., v. Unified Government of Athens-Clarke County, 217 F.3d 1360, 1363-64 (11th Cir. 2000) (reproducing ordinance providing that combination of public nudity in combination with the sale and consumption of alcoholic beverages "begets criminal behavior and tends to create undesirable community conditions").

---

[9]  The Clubs argue that the ordinance at bar is distinguishable from that in Sammy's because Fulton County did not rely on the Twenty-first Amendment in amending the ordinance. However, the district court correctly found that "[e]ntirely apart from the Twenty-first Amendment, the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations." 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 116 S.Ct. 1495 (1996).  This power is located in the inherent police power of every state to regulate to promote public decency.  Id.

16

Second, the Supreme Court has recognized that a regulation is not necessarily content-based simply because on its face it distinguishes among types of speech based on their content. See Renton v. Playtime Theatres, 475 U.S. 41, 46-48, 106 S.Ct. 925. In Renton, the plaintiff argued that the ordinance was content-based because it treated theaters that specialized in adult films differently from other kinds of theaters. However, the Court applied intermediate scrutiny reasoning that the ordinance was aimed not at the content of the films shown at the adult motion picture theaters, but rather at the secondary effects of such theaters on the surrounding community. Here, as in Renton, the Board's predominate concern, as manifested in the preamble of Section 18-76, was the secondary effects of nude dancing combined with the consumption of alcoholic beverages, not at the message conveyed by nude dancing. Accordingly, we find that amended Section 18-76 is content-neutral and review the Fulton County ordinance pursuant to the test set forth in O'Brien.

2.    Applying the O'Brien test

Under O'Brien, an ordinance is valid if: (1) it serves a substantial interest within the power of the government; (2) the ordinance furthers that interest; (3) the interest served is unrelated to the suppression of free expression; and (4) there is no less restrictive alternative. See O'Brien, 391 U.S. at 377, 88 S.Ct. at 1679.

17

Defendants assert that Section 18-76 was amended to prevent the occurrence of criminal behavior and undesirable community conditions, specifically identified in the preamble as depression of property values, increased crime, and acceleration of community blight. Such interests are substantial government interests that satisfy the first part of the O'Brien test. See, e.g., Pap's (applying O'Brien test to city of Erie's prohibition on public nudity and finding that stated interest in combating secondary effects related to nude dancing is clearly within city's police powers to protect public health and welfare).

Section 18-76 also satisfies the third and fourth prongs of the O'Brien test. See O'Brien, 391 U.S. at 377, 88 S.Ct. at 1679. Both our court and the Supreme Court have expressly held that an ordinance focusing on the secondary effects associated with the combination of nude dancing and alcohol consumption is unrelated to the suppression of free expression. See Pap's, 120 S.Ct. at 1393 (stating that the government's interest in combating harmful secondary effects is not related to the suppression of expression); accord Wise Enterprises, Inc., 217 F.3d 1360, 1364.[10] Moreover, such a restriction on First Amendment rights is no greater than necessary to further the government's interest, as required under the

_____

[10] Although the Plaintiffs contend that Section 18-76 fails to meet this factor, they present no evidence that Fulton County passed the ordinance to hinder the communicative aspects of such conduct.

18

fourth prong of the O'Brien test.  See Pap's, 120 S.Ct. at 1397 (concluding that, in order to comply with ordinance, requirement that dancers wear pasties and G-strings leaves ample capacity to convey the dancer's erotic message); Wise Enterprises, Inc., 217 F.3d at 1365 (reasoning that ordinance does not prohibit all nude dancing, but only in those locations where the unwanted secondary effects arise).

The second prong of the O'Brien test, however, states that the regulation must further an important government interest.  See O'Brien, 391 U.S. at 376.  The avoidance of criminal activity, protection of property values, and avoidance of community blight are undeniably important.  See Pap's, 120 S.Ct. at 1395 (stating that asserted interest in combating secondary effects associated with nude dancing are undeniable important).  However, it is less clear whether Section 18-76 furthers the Defendants' stated interest in preventing the occurrence of negative secondary effects associated with the types of businesses operated by Plaintiffs.

In order to meet their burden under this element, the Defendants must have "some factual basis for the claim that [adult] entertainment in establishments serving alcoholic beverages results in increased criminal activity" and other undesirable community conditions.  Grand Faloon Tavern, Inc. v. Wicker, 670 F.2d 943 (11th Cir. 1982) (upholding county ordinance prohibiting nude and semi-

nude entertainment in establishments licensed to sell liquor where city commissioners had evidence that substantial criminal activity took place in topless bars). In terms of demonstrating that such secondary effects pose a threat, the city need not "conduct new studies or produce evidence independent of that already generated by other cities ... so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." Pap's, 120 S.Ct. at 1395 (quoting Renton, 475 U.S. 41, 51-52, 106 S.Ct. 925 (1986)). In Barnes, for example, the Court determined that Indiana's public indecency statute reflected moral disapproval of people appearing nude in public, and found evidence in a long line of public indecency laws, dating from 1831, that the statute furthered the government's interest in protecting order and morality. See Barnes, 501 U.S. 560, 567-68, 111 S.Ct. 2456, 246. In Pap's, the Supreme Court held that Erie city council members could reasonably rely on the experience of other cities, in addition to their own first-hand knowledge, as evidence that the same kind of nude dancing was likely to produce the same secondary effects. See Pap's, 120 S.Ct. at 1395. Thus, we find no basis for Defendants' contention that, pursuant to

20

Pap's and Barnes, we may presume the evidence needed to meet the second prong of the O'Brien test.[11]

Our own cases demonstrate that we require some reasonable justification for legislation which suppresses, albeit incidentally, protected expression.[12] See Sammy's, 140 F.3d at 997 (relying upon the experience of other cities, foreign studies, case law reciting findings, as well as the officials' own wisdom and common sense); Wise Enterprises, Inc., 217 F.3d at 1364 (experience of other cities, foreign studies, and a local police report documenting police visits to adult entertainment establishments). In this case, the Board amended Section 18-76 of the adult entertainment ordinance because it was concerned that adult entertainment facilities caused (a) depression of property values; (b) increase in crime and expenditures related thereto; and (c) neighborhood blight. See Preamble to Ordinance Amending Section 18-76. Unlike in Pap's and Sammy's, where the plaintiffs never challenged the cities' findings, the Fulton County Clubs challenged

---

[11] For example, Defendants contend that the Supreme Court in Barnes upheld Indiana's ban on public nudity without requiring any evidence of how the government's interest was furthered. In fact, the Court found it difficult to discern what governmental interest the legislation served because Indiana does not record legislative history. However, the Court found that the history of Indiana's public indecency statute, dating from 1831, evinced that the statute furthered the government's interest in protecting societal order and morality.

[12] Although we might disagree that nude dancing contains any expression protected by the First Amendment, the test has been given us. We will not merely go through the motions of applying it.

and disproved the Board's findings.  The evidence in the record relating to conditions in Fulton County shows unequivocally that property values in neighborhoods adjoining the Clubs have increased during the time the Clubs have been in existence, and that surrounding buildings show no signs of blight, or lack of physical maintenance.  Moreover, the Fulton County police study found greater reported crime connected with establishments that served alcohol but did not feature adult entertainment.  In other words, local studies commissioned both by the Clubs and the Board found no evidence of the secondary effects with which the Board was purportedly concerned.  The question thus becomes, was it reasonable for Defendants to ignore relevant local studies and rely instead upon remote foreign studies in determining whether adverse secondary effects were attributable to the Fulton County Clubs?

We do not think that Defendants had any reasonable justification for amending Section 18-76 when the county's own studies negated the very interests it purportedly sought to prevent.  See Krueger v. City of Pensacola, 759 F.2d 851 (11th Cir. 1985).  In Krueger, we stated that where the right to free speech is at issue, the government bears the burden of showing that the articulated concern has more than merely speculative factual grounds, and that it was actually a motivating factor.  See id. at 855.  Thus, in that case, we held unconstitutional a city ordinance

22

which banned nudity in establishments that served alcoholic beverages because the city failed to produce any evidence of a crime problem, the city's purported justification in passing the ordinance. Id.; cf. Grand Faloon Tavern, 670 F.2d 943, 950 (report of police calls and testimony of police officers concerning crime associated with nude entertainment provided necessary link between stipulated purpose of the ordinance and the problems justifying it). We recognize that a governmental entity is not required to perform empirical studies. See Pap's, 120 S.Ct. at 1395. However, having done so, the Board cannot ignore the results. Local studies, including those commissioned by the county itself, revealed that the Clubs had less, up to half, the incidence of crime than establishments that did not offer nude dancing, property values had increased in the Clubs' surrounding neighborhoods, and the physical maintenance of surrounding buildings showed no quantifiable blight. Accordingly, we find that it was unreasonable for Defendants to rely on remote, foreign studies concerning secondary effects when the county's own current, empirical data conclusively demonstrated that such studies were not relevant to local conditions.[13]

---

[13] Given our decision, we need not address the Plaintiffs' argument that the foreign studies relied upon by Defendants do not examine the connection between drinking and nude dancing, and secondary effects. Cf. Diva's, Inc. v. City of Bangor, 21 F.Supp.2d 60 (D.Me.1998) (holding unconstitutional ordinance enacted in reliance on foreign studies which focused only on efficacy of land use and zoning schemes in reducing crime).

The case might be different were the Clubs a recent addition to Fulton County neighborhoods. It is undisputed, however, that Plaintiffs have continually operated these adult entertainment establishments for nearly a decade.[14] We realize that our decision today appears to result in constitutional fact finding, in which the constitutionality of an ordinance will depend on local conditions. However, we have no choice; we are bound by the decisions of the Supreme Court and the law of our circuit. To be sure, Defendants may respond by enacting a ban on all public nudity; the Supreme Court has upheld that. See Pap's, 529 U.S. 277, 120 S.Ct. 1382; see also Barnes, 501 U.S. 560, 111 S.Ct. 2456. However, Defendants may not ban nude dancing in establishments licensed to sell liquor without any factual basis to support the claim that these establishments are connected with negative secondary effects.

We reiterate that, to satisfy the O'Brien test, the county must demonstrate that it reasonably relied upon evidence relevant to the problem that it addresses. See Pap's, 120 S.Ct. at 1395. We simply cannot find it reasonable for a government entity to conduct studies on specific areas and then to reject the conclusions thereof in favor of studies from different cities and different time

[14] In their Reply Brief to the Motion For Summary Judgment, Defendants concede that Mardi Gras has continually operated an adult entertainment establishment in Fulton County since 1992, Flashers since 1991, Fannies since 1984, and Riley's since 1983.

24

periods. Accordingly, we hold that Section 18-76 is unconstitutional under the O'Brien test because the ordinance fails to further the professed government interests.

B.     Due Process

Plaintiffs Flashers and Fannies contend that Section 18-76, as amended, deprives the Clubs of a vested property right in their alcoholic beverage and adult entertainment licenses in violation of due process of law. U.S. Const. Amend. XIV, § 1. They assert that the Clubs have a vested right in these licenses based on the fact that Defendants have renewed their licenses in the past, as well as their expectation of renewal due to the wording of the licensing scheme. Defendants argue that the 1997 amendment effects all existing and future adult entertainment establishments in Fulton County, and as such, constitutes legislative action undertaken by the Board in the normal manner prescribed by law.[15] Alternatively, Defendants argue that Plaintiffs had nothing more than a unilateral expectation in

_____

[15] Plaintiffs argue that the ordinance constitutes adjudicative action because they occupy the only sites for adult entertainment; that Fulton County exempted them, as a prior non-conforming use, from a 1992 zoning ordinance prohibiting adult entertainment in establishments licensed to sell alcoholic beverages. The district court found that Section 18-76 applies to all adult entertainment establishments, whether existing or future, and relied on the averment of the Deputy Director of Environment and Community Development to the effect that numerous sites are available in Fulton County for other adult entertainment establishments. The district court also found that Plaintiffs do not have a vested property interest in the renewal of their license because, the Clubs were not exempt from the county's legitimate exercise of its police powers in furtherance of a substantial government interest. Accord, Goldrush II v. City of Marietta, 267 Ga. 683, 696 (1997) (rejecting plaintiff's state and federal constitutional claims).

the renewal of their licenses, and as such were not exempt from a change in the law pursuant to a legitimate exercise of the city's police power to protect public welfare and safety. Finally, Defendants assert that the Plaintiffs received due process.[16]

Due process of law requires notice and an opportunity for some kind of hearing prior to the deprivation of a significant property interest. Halverson v. Skagit County, 42 F. 3d 1257, 12260 (9th Cir. 1994). Assuming, *arguendo*, that Section 18-76 operates as an adjudication targeted at the Clubs, and that the Clubs have a vested property right in their adult entertainment and liquor licenses, we agree with the district court that Plaintiffs were granted due process.[17] Plaintiffs' claim of a lack of procedural due process fails as a matter of law.

C.    Prior Restraint

---

[16] Although in their Brief Flashers and Fannies allege that the Defendants deprived the Clubs of their right to substantive and procedural due process, they fail to elaborate or provide any citation of authority in support of the former allegation. Therefore, we are left to conclude that Flashers and Fannies have waived this argument, and address only the claim for procedural due process. See Fed. R. App. P. 28(a)(9); see also Continental Tech. Servs., Inc., v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir. 1991).

[17] Plaintiffs had notice of the Defendants' contemplated action at least as early as April 16, 1997, eight months prior to the amendment of Section 18-76. The Clubs were represented on a specially formed Adult Entertainment Committee, and had opportunity to discuss issues relating to the regulation at two public meetings of this committee. Finally, the Board conducted two public hearings, and permitted fifteen minutes to each Plaintiff's counsel, present at the first hearing, in order to present the Clubs' concerns and the Clubs' studies.

Next, Flashers and Fannies argue that the district court erred in failing to consider their claim that Section 18-76 is part of a licensing scheme that operates as an invalid prior restraint. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 228 (1990). In declining to address the merits, the district court held that the Plaintiffs' challenge to the licensing scheme was a new claim raised for the first time in response to the Defendants' motion for summary judgment. That response, filed more than fifteen months after commencement of this suit, was unaccompanied by either a motion to amend the pleadings or any reason justifying an amendment. Thus, we must decide whether the Plaintiffs' pleadings were sufficient to give Defendants and the court notice that the entire licensing scheme, and not just Section 18-76 were subject to challenge as a prior restraint. See Lyes v. City of Riviera Beach, 126 F.3d 1380, 1387 (11th Cir. 1997) (deciding whether complaint invoking Fourteenth Amendment gave notice of equal protection claim where district court only analyzed due process claim).

Plaintiffs' complaints, at first blush, expressly challenge the "Liquor Ordinance" or "Ordinance" as a prior restraint. See Mardi Gras complaint in Civ. No. 1-98-CV2441, ¶¶ 34, 44; Plaintiffs Flashers' and Fannies' complaint in Civ. No. 1-98-CV-2904, ¶¶ 33, 42; Plaintiff Riley's complaint in Civ. No. 1-98-CV-2910, ¶ 8. However, a closer reading reveals that Plaintiffs specifically limited

27

their constitutional challenge to the 1997 amendment which restricted the sale and consumption of alcohol at adult entertainment establishments, and the absence of negative secondary effects connected with the Clubs.[18]  By contrast, the licensing scheme which Plaintiffs now attack is contained in separate sections of the Fulton County Code, sections 18-111 and 18-112 Division 2. Chapter 18 Article III.  No part of the licensing regulation was a part of the 1997 amendment to Section 18-76 "Rules for Operation" Division 1. Chapter 18 Article III.  We have not even been able to locate sections 18-111 and 18-112 of the Fulton County Code in the record.  Accordingly, we find that the Plaintiffs failed to plead facts sufficient to notify Defendants or the court that they challenged the licensing scheme as a whole.  We affirm the district court's decision not to address the merits of this claim.[19]

---

[18]  For example, Mardi Gras' complaint prays for a preliminary injunction on the basis that "[t]he ordinance prohibiting the sale or consumption of alcohol on the premises of adult entertainment facilities (the "Liquor Ordinance") is facially invalid in that it ... constitutes a prior restraint...."  See Mardi Gras Complaint, ¶ 34.  In fact, each of the nine legal causes of action asserted by Mardi Gras relies specifically on the 1997 amendment to Section 18-76.

[19]  In its Brief, Flashers and Fannies contend that the district court erred in severing the prior restraint analysis from the question of the constitutionality of Section 18-76 because that section is part and parcel of a licensing scheme which operates as a prior restraint.  However, the authority they cite is inapposite.  See 10280 Northfield Road, LLC v. Village of Northfield, 1996 U.S. App. LEXIS 3662 (6th Cir.).  In that case, the Village of Northfield adopted an ordinance that sought to regulate adult entertainment businesses by enacting a zoning and licensing scheme.  See id. *4.  The district court found that the licensing scheme operated as an unconstitutional prior restraint, and attempted to salvage the ordinance by severing the licensing scheme.  See id. *2-3.  The Sixth Circuit held that the district court had impermissibly rewritten the ordinance because the ordinance was designed to function through the issuance or rejection of conditional permits.  See id. *17.  These facts are not presented here.

D.      Obligation of Contract

Finally, Flashers and Fannies claim that Section 18-76 impairs the Clubs'

right to contract in violation of the Contracts Clause . See U.S. Const. art. I, § 10,

cl. 1.  Specifically, Flashers and Fannies argue that their leases provide that the

premises shall be used for a topless nudity bar, and require both clubs to maintain a

liquor license.[20]

The United States Constitution provides that "no state shall ... pass any Law

impairing the Obligation of Contracts...."  U.S. Const. Art. I, § cl. 1.  In evaluating

a Contracts Clause claim, the court must determine whether the state law operates

as a substantial impairment of a contractual relationship and if so, whether the

impairment is necessary to meet an important government interest.  Allied

Structural Steel Co. v. Spannaus, 438 U.S. 234, 98 S.Ct. 2716 (1978).  However,

"it is to be accepted as a commonplace that the Contract Clause does not operate to

obliterate the police power of the States. ... [T]he police power [] is an exercise of

the sovereign right of the Government to protect the lives, health, morals, comfort

and general welfare of the people, and is paramount to any rights under contracts

between individuals."  Spannaus, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722.

---

[20]  The record does not contain evidence of lease provisions involving the other Plaintiffs.

29

We have already determined that the amendment to Section 18-76 constitutes a valid exercise of the Defendants' police powers. See Pap's (combating secondary effects related to nude dancing is clearly within city's police powers to protect public health and welfare). Thus, even if Section 18-76 impairs Plaintiffs' contractual leases, we agree with the district court that the ordinance remains a valid exercise of the County's police power to protect the health, safety, welfare and morals of its citizens.

IV    Conclusion

The district court granted summary judgment for Defendants on all grounds. We REVERSE the grant of summary judgment on the First Amendment freedom of expression claim and AFFIRM the grant of summary judgment on all other claims. We REMAND the case to the district court for further proceedings consistent with this opinion.