**MERMAIDS, INC.; R.F. London, Inc.; Robert F. London; and William Fenner, Jr., Plaintiffs,**

v.

**CURRITUCK COUNTY BOARD OF COMMISSIONERS; Currituck County Board of Adjustment; Eldon L. Miller, Jr., S. Paul O'Neal; Ernie Bowden; Gene A. Gregory; J. Owen Etheridge; and Jack Simoneau, Defendants.**

No. 2:96–CV–60–BO(3).

United States District Court, E.D. North Carolina, Northern Division.

Aug. 29, 1998.

Clyde Holt, III, Charles F. McDarris, Eric M. Braun, Holt & York, Raleigh, NC, for Plaintiffs.

Lennie Lewis Hughes, Elizabeth City, NC, for Defendants.

## ORDER

TERRENCE WILLIAM BOYLE, Chief Judge.

This matter is before the Court on Plaintiffs' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and on Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The underlying action arises under the First and Fourteenth Amendments to the United States Constitution and section 1983 of Title 42 of the United States Code. Plaintiffs also assert a State law cause of action pursuant to the Constitution of the State of North Carolina. In consideration of the parties' arguments, the Court will deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Motion to Dismiss.

## BACKGROUND

Plaintiffs operate an establishment known as Mermaids Nightclub and Grill (hereinafter "Mermaids"), located in Currituck County, North Carolina. On August 8, 1993, Plaintiff R.F. London, Inc. ("R.F. London") applied to the Currituck County Board of Adjustments (the "Board of Adjustments") for a conditional use permit (the "permit") to operate a nightclub on property owned by Robert F. London in Currituck County. On August 25, 1993, the Board of Adjustments denied this application following a public hearing. R.F. London filed for *certiorari* with the Superior Court of Currituck County. That court ordered the Board of Adjustments to issue a permit or re-hear the case for additional evidence, on the ground that the original denial was not supported by competent evidence.

On January 26, 1994, the Board of Adjustments re-heard the case and issued R.F. London a permit to operate a nightclub. Plaintiffs operated Mermaids without topless entertainment between the date of the issuance of the permit and May 1994. During this time period, Plaintiffs inquired about offering topless dancing in their establishment, but were advised that Currituck County ordinance 1304(3)(f) prohibited all "adult entertainment" within the County. Mermaids' permit was revoked by the Board of Adjustments on August 31, 1994, on the ground that Robert F. London had substantially misrepresented material facts at the August 25, 1993, public hearing. Following this revocation, R.F. London filed an appeal for a review of the Board of Adjustment's decision with the Currituck County Superior Court. That court issued an order finding that R.F. London had "clearly misrepresented his intended use of the property in question," and that the misrepresentation of its "intended use of the subject property during the application process and public hearing before the Board of Adjustments ... denied the public the right to have an open and complete discussion of the true facts." *R.F. London, Inc. v. Currituck County Board of Adjustments,* No. 94–SP–78 (Currituck County Superior Court., Sept. 29, 1994). The court declared the permit invalid and ordered the Board of Adjustments to conduct a new public hearing. *Id.*

During this time, the County amended and recodified section 1304(3)(f) as section 808 of the County Unified Development Ordinance. Section 808 only permits "adult entertainment" in "Heavy Manufacturing" ("HM") districts. Section 808 also requires the issuance of a special use permit, which can be granted only by the Currituck County Board of Commissioners, rather than a conditional use permit issued by the Board of Adjustment. A public hearing was held on May 29, 1996, at which the Board of Adjustments found that Plaintiffs' proposed use of the property did

not comply with the requirements of the Currituck County Unified Development Ordinances. R.F. London did not appeal this decision.

On November 8, 1996, the Board of Adjustments filed suit in Currituck County Superior Court against R.F. London and Robert F. London for the operation of a business in Currituck County without a permit. The instant action was then filed in this Court on November 7, 1996. On November 12, 1996, the Board of Adjustments and Currituck County filed for injunctive relief against R.F. London and Robert F. London in Currituck County Superior Court, seeking to close Mermaids for operation of a business without a permit as required by county ordinance. Plaintiffs filed the instant summary judgment motion on February 5, 1998, and the parties have filed memoranda in support of their respective positions. Oral argument was held in this Court on June 9, 1998, and the matter is ripe for adjudication.

## DISCUSSION

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. Federal R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must demonstrate the lack of a genuine issue of fact for trial and, if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Id.* at 324, 106 S.Ct. 2548. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should only be granted in limited circumstances. *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir.1991); *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989). Inferences should be construed in the light most favorable to the party opposing the motion, and the motion should be granted only if that party has no chance of prevailing on the merits of its argument.

The First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend I. The First Amendment's proscription against governmental restrictions on speech is applied to the States through the doctrine of incorporation in the Fourteenth Amendment. The United States Supreme Court has held that the First Amendment guarantees all citizens the right to freedom of speech and expression. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). The Supreme Court has repeatedly recognized that nude or partially-nude dancing is a form of expression which is "not without its First Amendment protections from official regulation." *Schad v. Mount Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 933–934, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 557–558, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

Although outside of textual protections of the Constitution, this protection for non-speech "expression" is derived from the Court's historical broadening of the understanding of "speech" in the First Amendment. For instance, the Court has noted that "[s]ymbolism is a primitive but effective way of communicating ideas," *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), and has recognized that the First Amendment shields such acts as saluting a flag or refusing to do so, *id.*, at 632, 642, 63 S.Ct. 1178, wearing an armband as a war protest, *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 505–506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), and adult entertainment, *see American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310. " '[N]udity alone' does not place otherwise protected material outside the mantle of the First Amendment," *Schad*, 452 U.S. at 66, 101 S.Ct. 2176 (quoting *Jenkins v. Georgia*, 418 U.S. 153, 161, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974)).

In *Doran v. Salem Inn*, the Supreme Court noted that, "although the customary 'barroom' type of nude dancing may involve

only the barest minimum of protected expression, we recognized in *California v. LaRue*, 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972), that this form of entertainment might be entitled to of First and Fourteenth Amendment protection under some circumstances." 422 U.S. at 932, 95 S.Ct. 2561. And in *Schad*, the Court said that "nude dancing is not without its First Amendment protections against official regulation." 452 U.S. at 66, 101 S.Ct. 2176.

The conclusion that topless dancing is a protected form of expression does not, of course, end the inquiry. All types of speech and expressive conduct are not entitled to the same level of constitutional protection. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). In *American Mini Theatres* the Court explained that even though sexually-oriented speech and expression is protected by the First Amendment, it is entitled to less protection than political speech. 427 U.S. at 69–70, 96 S.Ct. 2440. Thus the Court held that the city of Detroit's zoning ordinance, which prohibited locating an adult theater within 1,000 feet of any two other "regulated uses" or within 500 feet of any residential zone, did not violate the First and Fourteenth Amendments. 427 U.S. at 72–73, 96 S.Ct. 2440 (plurality opinion of Stevens, J., joined by Burger, C.J., and White and Rehnquist, JJ.); *id.* at 84, 96 S.Ct. 2440 (Powell, J., concurring).

While content neutral regulations on the "time, place, and manner" of protected speech are permissible as long as they are designed to serve a "substantial governmental interest and do not unreasonably limit alternative avenues of communication," the Supreme Court "has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (citations omitted). When considering the purposes behind legislation such as the zoning ordinance at issue here, federal courts must keep in mind the "familiar principle of constitutional law" that courts may "not strike down an otherwise constitutional stat-ute on the basis of an alleged improper legislative motive...." *United States v. O'Brien*, 391 U.S. 367, 383–84, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

■ In assessing the legislative intent of the Currituck County Board of Commissioners in enacting section 808, the Court must determine whether the county's "pursuit of its zoning interests here was unrelated to the suppression of free expression." *Playtime Theatres*, 475 U.S. at 48, 106 S.Ct. 925. Local governments may zone for the public welfare. *See Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct. 98, 99 L.Ed. 27 (1954). This power is considerable but subject to constitutional limits. *See Schad*, 452 U.S. at 68, 101 S.Ct. 2176. Where property interests are infringed by zoning ordinances, courts are generally deferential to the broad powers of municipalities and counties to control land use, and generally approve such regulations if they are rationally related to legitimate state concerns and do not deprive the property owner of economically viable uses of his property. *Id.* (citations omitted). Of course, where a zoning ordinance infringes upon a constitutionally protected liberty it must be narrowly drawn and further a substantial governmental interest. *Id.*

By its terms, the Currituck County ordinance at issue here was enacted "[f]or the purpose of promoting the health, safety, morals and general welfare of the citizenry of Currituck County" by "regulat[ing] adult and sexually oriented businesses...." Currituck County Unified Dev. Ord. § 808(2). The Currituck County zoning ordinance, like the one at issue in *American Mini Theatres*, does not ban "adult businesses" altogether, but only permits them to locate in HM zoning districts and not within 1000 feet of any dwelling, church, public school, day care center, park, or any Residential zoning district. Currituck County Unified Dev. Ord. § 808(5), (6). The ordinance is therefore properly analyzed as a "time, place, and manner" regulation, like the laws at issue in *American Mini Theatres* and *Playtime Theatres*.

The Supreme Court has repeatedly held that "[r]easonable regulations of the time, place, and manner of protected speech,

where those regulations are necessary to further significant governmental interests, are permitted by the First Amendment." *American Mini Theatres,* 427 U.S. at 63 n. 18, 96 S.Ct. 2440 (citing *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). This Court must now determine if the ordinance at issue here is a "reasonable regulation" of the type of adult entertainment offered by the Plaintiffs.

In deciding whether the ordinance is reasonable, the Court will apply the four-part test first enunciated in *O'Brien* and later applied to the adult entertainment context by the Supreme Court in *Playtime Theatres* and *Barnes.* "[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Barnes,* 501 U.S. at 567, 111 S.Ct. 2456 (quoting *O'Brien,* 391 U.S. at 376–377, 88 S.Ct. 1673); *see D.G. Restaurant Corp. v. City of Myrtle Beach,* 953 F.2d 140 (4th Cir.1991) (applying four-part *O'Brien* test to city ordinance restricting adult businesses).

■ As noted above, Currituck County is clearly within its constitutional powers in enacting a zoning ordinance which regulates the types of businesses which may operate in residential and other areas of the county. "It is well within the constitutional power of [a county] to adopt zoning regulations that limit the areas in which adult entertainment enterprises may operate. It is also well-established that the regulation of nudity in public places advances a substantial governmental interest in maintaining order and morality." *D.G. Restaurant,* 953 F.2d at 145 (citing *Playtime Theatres,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29). The ordinance at issue in the instant case also furthers an important substantial governmental interest. The ordinance itself specifically provides that it was enacted "[f]or the purpose of promoting the health, safety, morals and general welfare of the citizenry of Currituck County. . . ." Currituck County Unified Dev. Ord. § 808(2). As a majority of the Supreme Court recognized in *American Mini Theatres,* a county's "interest in attempting to preserve the quality of urban life is one that must be accorded the highest respect." 427 U.S. at 71, 96 S.Ct. 2440 (plurality opinion); *see id.,* at 80, 96 S.Ct. 2440 (Powell, J., concurring) ("Nor is there doubt that the interests furthered by this ordinance are both important and substantial."). The Court noted similar concerns in *Paris Adult Theatre v. Slaton,* 413 U.S. 49, 61, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973): "In deciding *Roth [v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) ], this Court implicitly accepted that a legislature could legitimately act on such a conclusion to protect the 'social interest in order and morality.' [*Id.,* at 485, 77 S.Ct. 1304]."

Currituck County's interest in protecting the health, safety, morals and general welfare of its citizenry is unrelated to the suppression of free expression. The County based section 808 on its study of the secondary effects of topless dancing on the surrounding community. Deposition of Jack Simoneau, Director of Planning for Currituck County, at 33, 38–39. Like the City of Renton in *Playtime Theatres,* Currituck County relied on studies of secondary effects of topless dancing in other communities around the nation. Id., at 36–37. Plaintiffs contend that the County did not actually rely on the secondary effects studies gathered before enacting the ordinance. In assessing the parties' claims, however, this Court is cognizant of the Supreme Court's instruction in *O'Brien* that courts should "not strike down an otherwise constitutional statute on the basis of an alleged improper legislative motive. . . ." 391 U.S. at 383–84, 88 S.Ct. 1673. The County has made a sufficient showing that it gathered and consulted secondary effects studies from other communities. It is not for the federal courts to look behind the proffered evidence of legislative decisionmakers to discover alleged improper methods or motives. This Court thus finds that Currituck County properly enacted the zoning ordinance at is-

sue here without improper or unconstitutional reference to the content of the expressive conduct it was regulating.

Finally, the Court must decide whether the incidental restrictions on the alleged First Amendment freedoms at stake here is no greater than is essential to the furtherance of Currituck County's governmental interest in enacting the ordinance. As discussed above, the governmental interest served by section 808 is the protection of the health, safety, morals, and general welfare of the citizenry of Currituck County. The Defendants have properly reserved HM districts for the legitimate establishment of adult entertainment businesses, and have therefore not completely barred the operation these businesses. The ordinance "expressly allows for reasonable alternatives to any asserted regulation of speech." *D.G. Restaurant,* 953 F.2d at 147. The ordinance is thus a valid time, place, and manner restriction. Plaintiffs' claims that the ordinance effectively "zones" them out of any commercially viable land is unavailing. As the Fourth Circuit noted in *D.G. Restaurant,* "[t]he decision to restrict adult businesses to a specific area does not oblige the [county] to provide commercially desirable land." *Id.*

### CONCLUSION

The Court thus concludes that section 808 of the Currituck County ordinances serves an important and substantial governmental interest and does not by its terms regulate dancing or any communicative element alleged to have been conveyed by topless dancing, and that any incidental restriction on erotic dancing is permitted since the regulation by the ordinance is narrowly tailored. The regulation of adult entertainment by the Defendants is a content-neutral time, place, and manner restriction.

Plaintiffs' Motion for Summary Judgment is thus DENIED, and Defendants' Motion to Dismiss is hereby GRANTED.

SO ORDERED.