**ELLINOS, INC., dba Club Babylon, Plaintiff,**

v.

**AUSTINTOWN TOWNSHIP, Defendant.**

**Leber, Inc., dba Rebel Lounge, Plaintiff,**

v.

**Austintown Township, Defendant.**

Nos. 4:00CV01207, 4:01CV00562.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 28, 2002.

Neal G. Atway, Atway, Cochran & Rafidi, Youngstown, OH, Luke Charles Lirot, Tampa, FL, for plaintiff.

Abraham Cantor, Concord, OH, W. Scott Fowler, Comstock, Springer & Wilson, Youngstown, OH, for defendant.

## MEMORANDUM, OPINION AND ORDER

LIMBERT, United States Magistrate Judge.

Defendant Austintown Township (Defendant) filed a motion for summary judgment requesting the Court to declare the Austintown Township Zoning Ordinance (Zoning Ordinance) constitutional both *facially* and *as applied* to adult uses, including the sexually oriented businesses operated by Plaintiff Ellinos, Inc. and Plaintiff Leber, Inc. (Plaintiffs).[1]  *See* ECF Dkt. # 38.[2]  Plaintiffs filed their own summary judgment motion which urges the Court to grant summary judgment in their favor and find that Defendant's Zoning Ordinance violates the U.S. Constitution *facially* and *as applied* to adult uses.  *See* ECF Dkt. # 42.

Because the Court finds that Defendant's Zoning Ordinance violates the First Amendment's proscription against governmental restrictions on speech as it applies to the States through the doctrine of incorporation in the Fourteenth Amendment to the U.S. Constitution, the Court hereby GRANTS Plaintiffs' motion for summary judgment and DENIES Defendant's motion for summary judgment.  *See* ECF Dkt. # 42, 38, respectively.[3]

## I.  JURISDICTION

█ "The Constitution allows federal courts only a limited and special jurisdiction, and powers not given to the federal

1.  Plaintiff Ellinos, Inc. does business as "Club Babylon" and Plaintiff Leber, Inc. does business as the "Rebel Lounge." *See* ECF Dkt. # 42 at 3, 22.  Plaintiffs Ellinos, Inc. and Leber, Inc. brought separate suits challenging the constitutionality of Defendant's Zoning Ordinance; the Court consolidated these separate suits on May 3, 2001, and ordered that all documents be filed under Case No. 4:00CV1207.  *See* ECF Dkt. # 23.

2.  Unless otherwise noted, all cites to Electronic Case Filings (ECFs) refer to the consolidated case, *Ellinos, Inc., d/b/a Club Babylon v. Austintown Township,* Case No. 4:00CV01207 (N.D.Ohio 2002).

3.  The Court deems Defendant's motion to strike Plaintiffs' affidavit attached to Plaintiffs' motion for summary judgment moot based upon the holding in this Memorandum, Opinion and Order.  *See* ECF Dkt. # 46.

courts by Congress are reserved to the primary repositories of American judicial power: state courts." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1252 (6th Cir.1996). Article III of the U.S. Constitution sets forth the judicial power of the United States to hear cases, including "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made." U.S. Const. Art. III § 2, cl. 1 (referred to as federal question jurisdiction). Congress chose to statutorily codify the federal question edict in almost precisely the same form as provided for in the Constitution. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") Thus, federal courts have the power to hear federal question cases to the fullest extent provided for by the Constitution. *See id.*

The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Toledo Fair Housing Center v. Farmers Ins. Group of Companies*, 61 F.Supp.2d 681, 682 (N.D.Ohio 1999). A plaintiff invokes federal question jurisdiction by presenting a pertinent Federal issue on the face of the complaint. *See Blair v. Source One Mortg. Services Corp.*, 925 F.Supp. 617, 620 (D.Minn.1996).

Plaintiffs in the now consolidated case *sub judice* have clearly presented federal issues on the face of their respective complaints. *See* ECF Dkt. # 1 (Case No. 4:00CV01207 and Case No. 4:01CV00562). Pursuant to 28 U.S.C. § 2201, Plaintiffs have prayed for the Court to declare the Defendant's Zoning Ordinance violative of, *inter alia*, the First, Fourth, and Fifth Amendments as applied to the states through the Fourteenth Amendment of the U.S. Constitution, both *facially* and *as applied* to sexually oriented businesses. *See id.* Based upon the presentation of fundamental federal claims in both of the Plaintiff's complaints, the Court finds that Plaintiffs have properly invoked the jurisdiction of this Court.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Ellinos, Inc. operates a sexually oriented business called "Club Babylon" in Austintown Township, Mahoning County, Ohio; this establishment opened its doors on October 14, 1998. *See* ECF Dkt. # 1 at ¶ 7, 11. Similarly, Plaintiff Leber, Inc. operates a sexually oriented business called the "Rebel Lounge" in Austintown Township, Mahoning County, Ohio; this establishment originally opened in the early to mid 1980's. *See* ECF Dkt. # 1 at ¶ 7, 11 (Case No. 4:01CV00562). Defendant Austintown Township is a political subdivision in Mahoning County, Ohio. *See* ECF Dkt. # 1 at ¶ 8.

On March 24, 2000 the Defendant's Zoning Inspector issued a notice of violation of Defendant's Zoning Ordinance to Plaintiff Ellinos, Inc. for allegedly operating an adult cabaret without having secured a conditional use permit. *See* ECF Dkt. # 1 at ¶ 28. In response on May 11, 2000 Plaintiff Ellinos, Inc. filed a complaint which launched a constitutional challenge to Defendant's Zoning Ordinance. *See* ECF Dkt. # 1.[4] Early the following year, on January 12, 2001 Defendant's Zoning Inspector issued a similar notice of violation of Defendant's Zoning Ordinance to

---

4. On September 7, 2000 the parties to Case No. 4:00CV1207, Plaintiff Ellinois, Inc. and Defendant Austintown Township consented to the jurisdiction of the undersigned. *See* ECF Dkt. # 14.

Plaintiff Leber, Inc for allegedly operating an adult cabaret without having secured a conditional use permit. *See* ECF Dkt. # 1 at ¶ 28 (Case No. 4:01CV00562). In response, on March 8, 2001, Plaintiff Leber, Inc. filed a comparable complaint which challenged Defendant's Zoning Ordinance. *See id.*[5]

Plaintiffs' complaints seek a declaration that Defendant's zoning regulations are unconstitutional, both *facially* and *as applied* to adult uses, in particular sexually oriented businesses. *See* ECF Dkt. # 1 at ¶ 1 (Case No. 4:00CV01207 and Case No. 4:01CV00562). Plaintiffs also seek injunctive relief enjoining Defendant from enforcing its Zoning Ordinance against their sexually oriented businesses. *See id.* at ¶ 6.

Plaintiffs claim that Defendant's zoning regulations violate the First, Fourth, and Fifth Amendments as applied to the states through the Fourteenth Amendment by imposing conditional use requirements on sexually oriented businesses. *See* ECF Dkt. # 1 at ¶ 1, 4, 5 (Case No. 4:00CV01207 and Case No. 4:01CV00562). More specifically, Plaintiffs aver that Defendant's Zoning Ordinance violates the First Amendment by acting as a prior restraint since it allows for unbridled administrative action. *See id.*[6] On May 3, 2001, in response to Defendant's motion to consolidate, the Court consolidated Plaintiffs' constitutional challenges and ordered that all documents be filed under Case No. 4:00CV1207. *See* ECF Dkt. # 22, 23.

On January 31, 2002 Defendant filed a motion for summary judgment requesting that the Court declare Defendant's Zoning Ordinance constitutional *facially* and *as*

*applied* to sexually oriented businesses, including the establishments operated by Plaintiffs. *See* ECF Dkt. # 38 at 10. On February 1, 2002 Plaintiff Ellinos, Inc. countered and filed its own summary judgment motion, along with an affidavit attested to by Nicholas Ellinos; Plaintiff Leber, Inc. joined this motion in its entirety. *See* ECF Dkt. # 42 at 10. Plaintiffs urge the Court to grant summary judgment in their favor and find that Defendant's Zoning Ordinance violates the First Amendment *facially* and *as applied* to sexually oriented businesses. *See* ECF Dkt. # 42.

Defendant filed an opposition brief to Plaintiffs' motion for summary judgment and also moved to strike the affidavit of Nicholas Ellinos. *See* ECF Dkt. # 46. Plaintiffs filed separate opposition briefs to Defendant's combined motion for summary judgment and motion to strike. *See* ECF Dkt. # 50, 51.

### III. STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the Court. *See Allen v. Wood,* 970 F.Supp. 824, 828 (E.D.Wash.1997). Similarly, the function of summary judgment is to dispose of cases without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *See Schultz v. Newsweek, Inc.,* 668 F.2d 911, 918 (6th Cir.1982). Summary judgment is particularly appropriate in a case challenging the facial constitutionality of a statute. *See Tee & Bee, Inc. v. City of West Allis,* 936 F.Supp. 1479, 1484

---

5. On April 25, 2001, the parties to Case No. 4:01CV00562, Plaintiff Leber, Inc. and Defendant Austintown Township consented to the jurisdiction of the undersigned. *See* ECF Dkt. # 11 (Case No. 4:01CV00562).

6. Plaintiffs also assert that Defendant's Zoning Ordinance lacks any legislative predicate, including any supportive studies, and does not provide for prompt judicial review. *See* ECF Dkt. # 42 at 7, 19.

(E.D.Wis.1996)(citing *Felix v. Young,* 536 F.2d 1126, 1130, n. 7 (6th Cir.1976)).

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). Under Rule 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *See Allen,* 970 F.Supp. at 828(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting FED. R. CIV. P. 56(c)). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir.1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* FED. R. CIV. P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *See id.* The nonmoving party must do this by presenting more than a scintilla of evidence in support of his or her position. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *See id.* at 249, 106 S.Ct. 2505. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## IV. DEFENDANT'S ZONING ORDINANCE

Defendant's Zoning Ordinance, as amended in 1993, regulates land uses in Austintown Township in Mahoning County, Ohio. *See* ECF Dkt. # 1, exhibit A at 1. The Zoning Ordinance divides Austintown Township into eleven districts: Residence R–1 through R–4, Business B–1 through B–3, Industrial I–1 through I–2, a Planned Unit Development, and an Agricultural–Suburban Estate. *See id.,* exhibit A at 2. The Zoning Ordinance specifies permitted buildings, structures and land uses for each district. *See id.,* exhibit A.

Article XIX of the Zoning Ordinance exclusively regulates "sexually oriented businesses." *See* ECF Dkt. # 1, exhibit A

at 58–61. The Zoning Ordinance defines a sexually oriented business as:

> ...one which is designed and used to sell, rent or show sexually explicit materials, to display nude bodies, or one which is distinguished or characterized by an emphasis on "Specified Sexual Activities", or "Specified Anatomical Areas" as herein defined and is more particularly, but not exclusively, defined as meaning an adult arcade, adult bookstore, adult video store, adult cabaret, adult motel, adult motion picture theater, or adult theater, or massage parlor.

ECF # 1, exhibit A at 58. The Zoning Ordinance provides individual definitions for the aforementioned locales. *See id.,* exhibit A at 59–60. Defendant classified Plaintiffs' establishments "Club Babylon" and the "Rebel Lounge" as adult cabarets [7] in the respective notices of violation served upon each Plaintiff, and thus within the broad definition of sexually oriented businesses under the Zoning Ordinance. *See supra, and* ECF Dkt. # 1, exhibit A at 58, 59.

Section 1902 of Article XIX of the Zoning Ordinance (Section 1902) essentially contains the zoning restrictions applicable to sexually oriented businesses. *See infra.* This section mandates that sexually oriented businesses satisfy several conditions, which include securing a conditional use permit, to operate within the boundaries of the Austintown Township. *See* ECF Dkt. # 1, exhibit A at 60–61. Section 1902 provides:

*1902–CONDITIONAL USE PERMIT REQUIRED–*

1. The Board of Zoning Appeals *may issue a Conditional Use Permit* for a sexually oriented business only in Business B–2 District, in each particular instance, only in the following conditions:

a) The proposed business parcel is located more than one thousand (1,000) feet from a church, a public or private school, boundary of a residential district as established by the Board of Township Trustees, the lot line of [sic] lot devoted to residential uses: public park or playground; an already existing sexually oriented business or one that has received a special use permit, any social service facility on neighborhood center, any boundary of a residential district in a local government abutting Austintown Township, or any structure that contains a residence;

b) All viewing booths and viewing areas in an Adult Arcade, Adult Bookstore, Adult Video Store, Adult Motion Picture Theater, or Adult Theater must be visible from a continuous main aisle and must not be obscured by any curtain, door, wall or other enclosure;

c) No sexually oriented activities or materials may be sold, furnished or displayed to any person under the age of eighteen (18) years;

d) *Applicants for a Conditional Use Permit for a sexually oriented business shall follow the procedure and provisions set forth in Article XVI–CONDITIONAL USES, Section 16001–1606 of the Zoning Ordinance.*

---

7. The Austintown Township Zoning Ordinance defines Adult Cabaret as, "...a night club, bar, restaurant, or other commercial establishment which regularly features: a) Persons who appear in a state of nudity, or; b) Live performances which are characterized by the exposure of 'specified anatomical areas' or by 'specified sexual activities', or; c) Films, motion pictures, video cassettes, slides, or other photographic reproductions which are characterized by the depiction of description of 'specified sexual activities' or 'specified anatomical areas.'" ECF Dkt. # 1, exhibit A at 59.

ECF Dkt. # 1, exhibit A at 60–61 (emphasis added to references to conditional use permit requirement). Section 1902 imposes conditions upon sexually oriented businesses in order for them to operate within the boundaries of Austintown Township. *See id.* First, sexually oriented businesses are restricted to only one of the Defendant's eleven zoning districts: the Business B–2 District. *See id.* Second, in order to locate within the Defendant's Business B–2 district, sexually oriented businesses must be more than one thousand (1,000) feet from various entities. *See id.* Third, all viewing booths and areas inside certain sexually oriented business must be visible from a continuous main aisle and must not be obscured. *See id.* Fourth, a sexually oriented business cannot sell, furnish or display any sexually oriented activities or materials to any person under the age of eighteen (18). *See id.* Lastly, Section 1902 compels sexually oriented businesses to obtain a conditional use permit to operate within the boundaries of the Austintown Township. *See* ECF Dkt. # 1 at ¶ 20, and exhibit A at 60, 61.

Article XVI of the Defendant's Zoning Ordinance (Conditional Use Permit Scheme) sets forth the requisite conditional use permitting requirements. *See* ECF Dkt. # 1, exhibit A at 48–50. The Zoning Ordinance's Conditional Use Permit Scheme, applies to all applicants, including sexually oriented businesses, and provides a mechanism for obtaining a variance to Defendant's Zoning Ordinance by allowing land use not otherwise authorized by the particular district's zoning regulations. *See id.* To obtain a conditional use permit, a sexually oriented business must submit an application to the Board of Zoning Appeals containing at a minimum the name, address and phone number of the applicant, the legal description of the property, the description of the existing use, the description of the proposed conditional use, and a detailed plan of the proposed site for the conditional use. *See* ECF Dkt. # 1, exhibit A at 50.

Once an application for a conditional use permit is submitted, the Board of Zoning Appeals utilizes general standards (contained within the Conditional Use Permit Scheme of Defendant's Zoning Ordinance) to review the facts and circumstances of the proposed use and either accept or reject the application. *See* ECF Dkt. # 1, exhibit A at 49. The Board of Zoning Appeals applies these general standards to evaluate any application for a conditional use permit, including those filed by sexually oriented businesses. *See id., and* ECF Dkt. # 1, exhibit A at 61 ("Applicants for a Conditional Use Permit for a sexually oriented business shall follow the procedure and provisions set forth in Article XVI–CONDITIONAL USES, Section 1601–1606 of Zoning Ordinance."). These general standards include whether such use:

1. Will be designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity, and that such use will not change the essential character of the same area;

2. Will be served adequately by essential public facilities and services, such as highways, streets, police and fire protection, drainage structures, refuse disposal, water and sewer, and schools; or that the persons or agencies responsible for the establishment of the proposed use shall be able to provide adequately any such services;

3. Will not create excessive additional requirements at public cost for public facilities and services, and will not be detrimental to the economic welfare of the community;

4. Will not involve uses, activities, processes, materials, equipment and condi-

tions of operation that will be detrimental to any persons, property, or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare, or order;

5. Will have vehicular approaches to the property which shall be so designed to not create an interference with traffic on surrounding public thoroughfares;

6. Will not result in the destruction, loss, or damage of a natural scenic, or historic feature of major importance.

ECF Dkt. # 1, exhibit A at 49.

Upon receipt of the application for a conditional use permit, the Board of Zoning Appeals must hold a public hearing within forty (40) days, and within thirty (30) days after the said public hearing, the Board of Zoning Appeals must either approve, approve with supplementary conditions or disapprove the application. *See* ECF Dkt. # 1, exhibit A at 50. If the application is approved outright or approved with modifications, the Board of Zoning Appeals directs the Zoning Inspector to issue a conditional use permit to the applicant, listing any applicable supplementary conditions for approval. *See id.* The Conditional Use Permit Scheme of the Defendant's Zoning Ordinance also provides that any person with an adverse ruling by the Board of Zoning Appeals may appeal to the Court of Common Pleas of Mahoning County, Ohio. *See id.*

In sum, in order to operate within the Austintown Township, a sexually oriented business must comply with the conditions contained in Section 1902 of the Defendant's Zoning Ordinance, which includes applying for and securing a conditional use permit. *See supra, and* ECF Dkt. # 1, exhibit A at 60–61. The Board of Zoning Appeals applies the general standards contained in the Conditional Use Permit Scheme to ascertain whether a sexually oriented business will be granted a conditional use permit to operate its

business within the Business B–2 district of Austintown Township. *See id.* Lastly, the Zoning Ordinance requires the Board of Zoning Appeals to render a decision concerning a conditional use permit application within seventy (70) days of receiving the application. *See id.*

## V. LAW AND ANALYSIS

### A. Constitutionality of Zoning Ordinance

■ This Court recognizes that local governments have broad inherent power to zone and control land use, and that courts generally uphold the exercise of such power so long as it is rationally related to legitimate state concerns and does not deprive the owner of an economically viable use of his property. *See Dia v. City of Toledo,* 937 F.Supp. 673, 677 (N.D.Ohio 1996)(citing *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)). Nevertheless, the exercise of zoning power cannot reach past established constitutional boundaries. *See id.* If a zoning ordinance infringes on First Amendment protected activity, it must be narrowly tailored to further a substantial government interest. *See id.*

Federal courts, including the Supreme Court of the United States, have repeatedly held that nude dancing is a form of expression within the outer ambit of the First Amendment of the U.S. Constitution. *See J.L. Spoons, Inc. v. City of Brunswick,* 18 F.Supp.2d 775, 777–778 (N.D.Ohio 1998)(citing *e.g., Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)). The First Amendment's proscription against governmental restrictions on speech is applied to the States through the doctrine of incorporation in the Fourteenth Amendment. *See Mermaids, Inc. v. Currituck County Bd. of*

*Com'rs,* 19 F.Supp.2d 493, 495 (E.D.N.C. 1998). It is well established though that licensor laws can regulate such expression as nude dancing, as long as those laws contain certain procedural safeguards to ensure that First Amendment rights are not violated. *See id.*(citing *FW/PBS v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)).

In order to operate in Austintown Township, a sexually oriented business must apply for and obtain a variance, *i.e.* a conditional use permit from the Board of Zoning Appeals. *See* ECF Dkt.# 1 at 48–50. A license is defined as, "A revocable permission to commit some act that would otherwise be unlawful." BLACKS LAW DICTIONARY 113, (7th ed.1999). The indispensability of the conditional use permit to operate a sexually oriented business in Austintown Township quite clearly fits this variance within the contours of the license definition. *See id.*

Thus, the Conditional Use Permit Scheme contained within Defendant's Zoning Ordinance and its impact upon sexually oriented businesses is properly evaluated by examining the line of cases dealing with the constitutionality of license requirements to First Amendment protected activity. The prior restraint doctrine applies to any licensing scheme regulating an entire business that runs the risk of suppressing constitutionally protected expression. *See Dia,* 937 F.Supp. at 677(citing *FW/PBS,* 493 U.S. at 225–26, 110 S.Ct. 596). Under the prior restraint doctrine, such licensing schemes are presumptively unconstitutional and must contain procedural safeguards designed to obviate the dangers of censorship. *See id.*(citing *FW/PBS,* 493 U.S. at 229, 110 S.Ct. 596).

As a form of prior restraint, licensing schemes have been known to suffer from the constitutional infirmity of granting impermissible discretion to municipal officials. *See Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358, 1361 (11th Cir.1999), *cert denied City of Jacksonville v. Lady J. Lingerie, Inc.,* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000). An ordinance that gives public officials the power to decide whether to permit expressive activity must contain *precise and objective criteria* on which they must make their decisions; an ordinance that gives too much discretion to public officials is invalid. *See id.*(citing *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162,(1969)(emphasis added)). To ensure that prior restraints do not infringe upon First Amendment rights, courts have required that a permitting scheme leave relatively little discretion in the hands of public officials regarding whether or not to grant a permit. *See Florida Cannabis Action Network, Inc. v. City of Jacksonville,* 130 F.Supp.2d 1358, 1363 (M.D.Fla.2001) (citation omitted).

The constitutional standard used to evaluate the general standards contained within the Conditional Use Permit Scheme is that zoning ordinances may not give public officials "unbridled" discretion to deny permission to engage in constitutionally protected expression. *See Shuttlesworth,* 394 U.S. at 151, 89 S.Ct. 935. The standard implies that some discretion is permissible, but further case law development demonstrates that virtually any amount of discretion beyond merely ministerial is constitutionally suspect. *See Lady J. Lingerie,* 176 F.3d at 1362. "Standards must be *precise and objective.*" *Id.*(citation omitted)(emphasis added). The law is clear that a permit-granting provision is constitutionally valid if it is narrowly drawn, with reasonable and *objective criteria* for granting it. *See U.S. v. McFadden,* 71 F.Supp.2d 962, 965 (W.D.Mo.1999)(citing *FW/PBS,* 493 U.S. at 226–28, 110 S.Ct. 596)(emphasis added).

Defendant's Zoning Ordinance grants the Board of Zoning Appeals discretion to determine which uses will get conditional use permits. *See* ECF Dkt. # 1, exhibit 1 at 49. The discretionary mechanism consists of the general standards contained within the Conditional Use Permit Scheme in Scheme XVI of the Defendant's Zoning Ordinance. *See id.* The Board of Zoning Appeals applies these general standards as it weighs an application for a conditional use permit. *See id.* These criteria apply to applicants of all sorts, not just sexually oriented businesses. *See id.* The question is whether these general standards pass constitutional muster.

The general standards, applicable to all conditional uses, and listed in the Conditional Use Permit Scheme contained in Article XVI of Defendant's Zoning Ordinance are neither precise nor objective. *See* ECF Dkt. # 1, exhibit A at 49. In fact, they are nebulous, vague and prone to subjectivity. *See id.* The general standards exhibit this cloudiness, *e.g.*, by mandating that the proposed use be "harmonious and appropriate in appearance with the existing or intended character of the general vicinity," while not changing "the essential character of the same area" or being detrimental to any persons, property or the general welfare by producing "excessive" traffic, smoke, fumes, noise or glare. *See id.* Other general standards mandate that the proposed use, "not be detrimental to the economic welfare of the community" or interfere with traffic on surrounding public thoroughfares. *See id.*

Even if a sexually oriented business meets the other conditions imposed by Section 1902, the imprecise concepts contained within the general standards clearly provide the Board of Zoning Appeals with a mechanism of last resort to disapprove a sexually oriented business' application for a conditional use permit. *See* ECF Dkt. # 1, exhibit A at 49. The problem with these general standards is that they empower the Board of Zoning Appeals to covertly discriminate against sexually oriented businesses under the guise of subjective "appropriateness" and community "general welfare" considerations. *See Red-Eyed Jack, Inc. v. City of Daytona Beach,* 165 F.Supp.2d 1322, 1328 (M.D.Fla.2001)(quoting *Lady J. Lingerie,* 176 F.3d at 1362).

The Court finds that the Zoning Ordinance's general standards contained within the Conditional Use Permit Scheme manifestly consist of ill-defined canons rather than precise standards. Further, even the name for these criteria, *"General* Standards Applicable to all Conditional Uses" bespeak their inherent vagueness and vulnerability to abuse. *See id.*(emphasis added)(the word general connotes impreciseness).[8] For these reasons, this Court finds that the Zoning Ordinance's general standards contained within the Conditional Use Permit Scheme, individually and collectively, empower the Defendant to not only eradicate the sexually oriented businesses that already exist, but to thwart sexually oriented businesses from cropping up in Austintown Township. Because nude dancing is protected expression, Defendant's Conditional Use Permit Scheme and its inherently impermissible discretionary standards fail to pass constitutional scrutiny *as applied* to sexually oriented businesses.

Thus, based upon these nebulous and vague general standards, this Court holds that the Conditional Use Permit Scheme contained in Article XVI of Defendant's Zoning Ordinance is unconstitutional *as*

---

**8.** This unconstitutional discretion is heightened by the additional provision allowing the Board of Zoning Appeals to impose additional supplementary conditions and safeguards in granting a conditional use permit. *See* ECF Dkt. # 1, exhibit A at 49.

*applied* to sexually oriented businesses, including Plaintiffs' establishments. *See Lady J. Lingerie, Inc.*, 176 F.3d at 1358(court holds general zoning scheme's procedures for obtaining a variance unconstitutional *as applied* to adult entertainment centers).

■ The Court's analysis, however, is not yet complete and the undersigned harkens back to Section 1902 which essentially contains the zoning restrictions applicable to sexually oriented businesses. *See supra* at 7–8. This section mandates that sexually oriented businesses satisfy several conditions, which include securing a conditional use permit, to operate within the boundaries of the Austintown Township. *See id.* Section 1902 contains at least three references to the requisite conditional use permit. *See id.* First, the section is entitled "Conditional Use Permit Required." Second, the first sentence of section 1902 states that the Board of Zoning Appeals, "...may issue a Conditional Use Permit for a sexually oriented business..." if certain conditions are met. *See id.* And third, section 1902 reiterates that applicants for a conditional use permit for a sexually oriented business must follow the provisions in the Conditional Use Permit Scheme and obtain such permit. *See id.*

Thus, the question becomes whether Section 1902 itself, in its entirety, is unconstitutional because it both incorporates the Conditional Use Permit Scheme by reference, and in fact contains multiple references to this unconstitutional apparatus. More specifically, the issue focuses on whether the unconstitutional incorporation of and the repeated references to the Conditional Use Permitting Scheme can be severed from Section 1902, enabling the remaining portions of Section 1902 to survive and operate independently on their own.

Severability in this instance is a matter of Ohio law. *See Leavitt v. Jane L.*, 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996). Ohio courts employ the following test for determining whether unconstitutional provisions or portions of a statute may in fact be severed: (1) Are the constitutional and unconstitutional parts capable of separation so that each may read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or a part thereof is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only? *See Harris v. Fitchville Tp. Trustees*, 154 F.Supp.2d 1182, 1190 (N.D.Ohio 2001) (citations omitted).

■ The Court concludes that under Ohio law the multiple references to and incorporation of the Conditional Use Permit Scheme cannot be severed from Section 1902. *See* ECF Dkt. # 1, exhibit A at 60–61. First, when one separates the unconstitutional references to the Conditional Use Permit Scheme from Section 1902, the remainder may not be read by itself. *See id.* The remainder of Section 1902 would lack any continuity since it would be missing the title, along with a large portion of the first sentence, and the last clause incorporating the Conditional Use Permitting Scheme by reference. *See id.*

Second, by eliminating any reference to or incorporation of the Conditional Use Permit Scheme, the remaining portion of Section 1902 would not give effect to the apparent intent of the Defendant to regulate. *See id.* Defendant's purpose in constructing Section 1902 was to regulate the operation of sexually oriented business and, "...to promote the health, safety, morals, and general welfare of the citizens

of the Township." *See id.* at 58. Without the Conditional Use Permit Scheme, Defendant will be deprived of considering and weighing such notions as the health, safety, or general welfare of the Austintown Township as it regulates the land use of sexually oriented businesses. *See id.* at 49 (general standards contained within the Conditional Use Permit Scheme). Severance in the case *subjudice* will clearly not effectuate the Defendant's intent in regulating the land use of sexually oriented businesses.

Third, section 1902 would have to be rearranged or rewritten by the Court to give any rationality or effect to the remaining portion of Section 1902. *See* ECF Dkt. # 1, exhibit A at 60–61. The necessity for additional wording clearly works against severance. *See Harris,* 154 F.Supp.2d at 1190. The Court feels that the manner in which the Zoning Ordinance should be rewritten is a matter within the province of the Defendant and its Board of Trustees and should not be usurped by this Court. *See Duryee v. U.S. Dept. of the Treasury,* 6 F.Supp.2d 700, 706 (S.D.Ohio 1995)(severance not appropriate where statute needs rewriting and the manner of redrafting is within province of legislature).

Thus, based upon this analysis of Ohio law, the Court holds that Section 1902 itself, in its entirety, is unconstitutional because the incorporation of and the repeated references to the Conditional Use Permitting Scheme cannot be severed from Section 1902.[9]

**B. Permanent Injunction**

█ The decision to grant a permanent injunction is within the judicial discretion of the District Court. *See Wayne v. Village of Sebring,* 36 F.3d 517, 531 (6th Cir.1994). A party seeking a permanent injunction must show that the following factors favor issuance of the injunction: (1) the threat of irreparable harm; (2) that this harm outweighs any injury that granting the injunction will inflict on the other party; (3) that the movant has met its burden of prevailing on the merits; and (4) that the public interest favors an injunction. *See Mga Susu, Inc. v. County of Benton,* 853 F.Supp. 1147, 1153–1154 (D.Minn.1994). The Court has already found that Plaintiffs prevail on the merits of their claim. And, the Court also believes that Plaintiffs have demonstrated the three additional factors entitling them to a permanent injunction.

The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Defendant does not dispute that the performances at "Club Babylon" and the "Rebel Lounge" are expressive conduct within the purview of the First Amendment. Denial of a permanent injunction and enforcement of the Zoning Ordinance therefore would result in irreparable harm to Plaintiffs by depriving them not only of the income generated by their business, but also their right to protected free expression. The harms to Plaintiffs clearly outweigh any harm to Defendant and there is no evidence that enjoining Defendant from enforcing the Zoning Ordinance will adversely affect the public in any way. Moreover, permanently enjoining enforcement of an unconstitutional zoning law will benefit the public by preserving First Amendment freedoms. *See Diva's, Inc. v. City of Bangor,* 21 F.Supp.2d 60, 63 (D.Me.,1998)(court issued permanent injunction against city to enjoin

---

**9.** To clarify, Defendant may still utilize its Zoning Ordinance including the general standards contained in the Conditional Use Permit Scheme to regulate land uses that are not entitled to First Amendment protection.

enforcement of occupancy permit ordinance because ordinance acted as unconstitutional prior restraint on freedom of speech). Having demonstrated the factors necessary to be entitled to a permanent injunction, the Court hereby grants a permanent injunction enjoining Defendant from enforcing the Zoning Ordinance against sexually oriented businesses.

## VI. CONCLUSION

Overall, based upon the nebulous and vague general standards and resultant unbridled administrative discretion contained within the Zoning Ordinance's Conditional Use Permit Scheme, this Court holds that Defendant's Zoning Ordinance regulating zoning in the Austintown Township is unconstitutional *as applied* to sexually oriented businesses, including Plaintiffs' establishments. Further, the Court holds that Section 1902 itself, in its entirety, is unconstitutional because the incorporation of and the repeated references to the Conditional Use Permitting Scheme cannot be severed from Section 1902.

For these reasons, the Court GRANTS Plaintiffs' motion for summary judgment. *See* ECF Dkt. # 42. And, the Court accordingly DENIES Defendant's motion for summary judgment. *See* ECF Dkt. # 38. Further, the Court also GRANTS a permanent injunction enjoining Defendant from enforcing the Zoning Ordinance against sexually oriented businesses, including Plaintiffs establishments.

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

This matter is before the Court upon dual motions for summary judgment filed by both Plaintiffs and Defendants. *See* ECF Dkt. # 42, 38, respectively. For the reasons set forth in the Memorandum, Opinion and Order issued in connection with these dual motions, and which is incorporated herein by reference, this Court GRANTS Plaintiffs' Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment. *See id.* The Court finds that there exist no genuine issues of material fact and that Plaintiffs are entitled to judgment as a matter of law.

The Court holds that Defendant's Zoning Ordinance regulating zoning in the Austintown Township is unconstitutional *as applied* to sexually oriented businesses, including Plaintiffs' establishments, due to the nebulous and vague general standards and resultant unbridled administrative discretion contained within the Zoning Ordinance's Conditional Use Permit Scheme. Further, the Court holds that Section 1902 itself, in its entirety, is unconstitutional because the incorporation of and the repeated references to the Conditional Use Permitting Scheme cannot be severed from Section 1902.

The Court also GRANTS a permanent injunction enjoining Defendant from enforcing the Zoning Ordinance against sexually oriented businesses, including Plaintiffs' establishments.

Therefore, **JUDGMENT** is granted in favor of Plaintiffs. Costs to be assessed to Defendant.

IT IS SO ORDERED.